Christopher D. Lee (SBN: 310042)
L.A. COMMERCIAL ATTORNEY, A PROF. LAW CORP.
134 E. Valley Blvd.,
Alhambra, CA 91801
Telephone: (626)782-7383
Facsimile: (626)782-7342
Email:Christopher@lacommerciallaw.com

Attorney for Defendant/Counter-Claimant
ELIZABETH YUNHONG ZOU

Peter S. Selvin (SBN 94710)
   pselvin@ecjlaw.com
Zoe M. Vallier (SBN 324324)
   zvallier@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Twelfth Floor
Beverly Hills, California 90212-2974
Telephone  (310) 273-6333
Facsimile  (310) 859-2325

Attorneys for Plaintiff
ACCU CASTING CO. INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ACCU CASTING CO. INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH YUNHONG ZOU, an individual; ICEMC, INC., a California corporation; CITIBANK, N.A., a National Banking Association; TD Ameritrade, a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM | Case No. 2:22-cv-05377 MEMF (AFMx)<br><br>The Hon. Maame Ewusi-Mensah Frimpong, Judge Presiding<br><br>**DEFENDANT/COUNTER-CLAIMANT ELIZABETH YUNHONG ZOU'S NOTICE OF MOTION FOR SUMMARY JUDGMENT; JOINT BRIEF OF MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AND IN OPPOSITION TO ZOU'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:     May 18, 2023<br>Time:     10:00 a.m.<br>Courtroom:  8B<br><br>*Action filed:*  *August 2, 2022*<br>*FAC filed:*    *September 23, 2022* |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on May 18, 2023 at 10:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court, Central District of California, located at 350 West First Street, Los Angeles, CA 90012 in Courtroom 8B, the Honorable Maame Ewusi-Mensah Frimpong, presiding, Defendant and Counter-Claimant Elizabeth Yunhong Zou will, and hereby does move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an Order granting summary judgment in her favor.

This motion is made on the ground that RAYMOND G. MURILLO lacks authority to file and maintain this lawsuit in the name of ACCU.

The Motion is made following the conference of counsel pursuant to L.R. 7-3 took place on December 20, 2022. *See* Declaration of Christopher D. Lee ¶2. This Motion is based on the pleadings in this case, Defendant's Memorandum of Points and Authorities in support of Summary Judgment, the declarations of Elizabeth Yunhong Zou and Christopher D. Lee, Defendant's Separate Statement of Uncontroverted Facts and Conclusions of Law, all files and records in this matter, and on such other oral or documentary evidence as may be presented at the hearing of this motion.

Respectfully submitted,

DATED: March 16, 2023

L.A. COMMERCIAL ATTORNEY, A PROF. LAW CORP.
Christopher D. Lee

By:  /s/Christopher D. Lee
Christopher D. Lee
Attorneys for Defendant/Cross-Complainant
ELIZABETH YUNHONG ZOU

# **TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................... 6

    A.      Moving Party's Introduction ........................................................ 6

    B.      Opposing Party's Introduction ..................................................... 7

II.     FACTUAL BACKGROUND .................................................................... 8

    A.      Moving Party's Background.......................................................... 8

    B.      Opposing Party's Background ...................................................... 9

III.    LEGAL STANDARD.............................................................................. 12

IV.     MOVING PARTY'S ARGUMENT......................................................... 12

    A.      ACCU's Bylaws Requires Board Approval from Its Board of
    Directors Prior to Filing Lawsuit.............................................. 12

    B.      MURILLO Lacks Authority to Bring This Lawsuit on Behalf of
    ACCU. ..................................................................................... 13

V.      OPPOSING PARTY'S ARGUMENT ..................................................... 16

    A.      The *Anmaco* Decision Is Inapplicable Where, As Here, Accu
    Had  A Sole Director At The Time This Lawsuit Was Filed ............... 17

    B.      Because There Are Disputes As To Material Factual Issues,
    Especially Whether Zou Resigned As A Board Member,
    Summary Judgment Should Be Denied................................... 19

    C.      In The Event The Court May Be Inclined To Grant The Motion,
    It Should Not Enter ZOU'S Proposed Judgment, But Should
    Instead Allow The Case To Proceed As A Derivative Action ............. 19

    D.      Because Of Its Pervasive Non-Compliance With The Court's
    Rules, Zou's Declaration Should Be Stricken...................... 20

VI.     CONCLUSION........................................................................................ 21

    A.      Moving Party's Conclusion ........................................................ 21

    B.      Opposing Party's Conclusion ..................................................... 22

VII.    MOVING PARTY' REPLY…………………………………...………..22

    I.      The Undisputed Facts ..……………………………………………22

    II.     The Disputed Facts .....……………………………………………22

    III.    Argument .................................................................23

       A. Article II, Section 19 of ACCU's Bylaws Requires Director's
       Resignation Notice to be Submitted in Writing, and It Cannot be Made
       Verbally………………………………………………………..24

       B. The New Alleged Dispute re: "Vice President" Argument Does Not
       Present a Genuine Issue of Material Fact ……………………………..25

       C. ACCU's "Irrelevant" Objection to Zou Declaration is Not Proper….26

    IV.     Moving Party's Reply Conclusion ..…………………………….26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adickes v. S.H. Kress & Co.*,
   3988 U.S. 144 (1970)................................................................. 9

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)........................................................ 13, 20, 25

*Anmaco, Inc. v.Bohlken*,
   13 Cal. App. 4th 891 (1993) ..............................................*passim*

*Arpin v. Santa Clara Valley Transp. Agency*,
   261 F.3d 912, 919 (9th Cir. 2001)………………………….………...23, 24

*Borkowski MBI v. Fraternal Order of Police*,
   155 F.R.D. 105 (E.D.Pa.1994)..................................................... 16, 19

*Brew v. City of Emeryville*,
   138 F. Supp. 2d 1217 (N.D. Cal. 2001) ........................................ 22

*Burch v. Regents of Univ. of Cal.*,
   433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006)………………………………….25

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 325(1986)………………………………...……..……………23, 24

*Eidem v. Target Corp.*,
   Case No. EDCV 10-01000 VAP(DTBx) (C.D. Cal. Aug. 24, 2011)………….25

*Gieselmann v. Stegeman*,
   443 S.W.2d 127 (Mo. 1969) ............................................................ 16

*Gross v. Adcomm, Inc.*
   478 S.W.3d 396(Ky. Ct. App. 2015) ......................................... 16, 19

*Hernandez v. Spacelabs Med. Inc.*,
   343 F.3d 1107 (9th Cir. 2003) ................................................ 18, 22

*Katzkin Leather, Inc. v. Roadwire, LLC*,

  CV 20-2093 DSF (RAOx) (C.D. Cal. May 6, 2022)…………………………..25

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

   475 U.S. 574, 586(1986)……………………………………………………………24

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*,
  210 F.3d 1099 (9th Cir. 2000) ............................................................ 13

*Orr v. Bank of America, NT & SA*,
  285 F.3d 764 (9th Cir. 2002) ............................................................. 18

*Rothman & Schneider, Inc. v. Beckerman*,
  2 N.Y.2d 493 (1957) ..................................................................... 19, 20

*Santandrea v. Siltec Corp.*
  (1976) 56 Cal. App. 3d 525 ................................................................ 16

*Sonner v. Schwabe North America, Inc.*,
  911 F.3d 989 (2018)............................................................................ 8

*Stone v. Frederick*,
  245 A.D.2d 742, 666 N.Y.S.2d 294 (N.Y.App.Div.1997) ........................ 16, 19

*Storix, Inc. v. .Iohnson*,
  2020 WL 7777493 (Cal. Ct. App. Dec. 31; 2020) (unpublished)..................... 20

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*,

  594 F.2d 730, 738 (9th Cir. 1979) ...................................................... 24

**Rules**

Fed. R. Civ. P. 56 (a)................................................................... 20

Fed. R. Civ. P. 56(c)....................................................................... 13

Fed. R. Civ. P. 56(c)(1)(A) ............................................................. 22

Fed. R. Evid. 801(d)(2) ................................................................... 9

Local Rules 56-3…………………………………………………………………..25

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

### A.    Moving Party's Introduction

Plaintiff ACCU CASTING CO. INC.("ACCU") is formed by two equal shareholders and directors, RAYMOND G. MURILLO("MURILLO") and ELIZABETH YUNHONG ZOU("ZOU"). A dispute arose between MURILLO and ZOU in late 2021 after ACCU 's long-time and only sourcing agent retired, which caused the company to lose its ability to supply products from China.

Without coming to terms concerning ZOU's exit from ACCU, MURILLO unilaterally blocked ZOU from the company's management, operation, cash reserves and bank accounts, and filed Statement of Information in January 2022 declaring himself as the "sole" director and officer. It is undisputed that the parties never executed any corporate minute, consent, resolution or written agreement indicating that ZOU ever agreed to resign as a director of ACCU.

MURILLO lacks authority to bring this lawsuit in the name of ACCU. Based on ACCU's bylaws, no officer has the power to enter into contracts or execute other instruments or render ACCU "liable for any purposes or any amount" without authorization from the Board of Director, the decision to prosecute this action, including retaining ERVIN COHEN & JESSUP LLP in this case, must be first approved by ACCU's Board of Directors. *See* Ex. 11, p.75.

Indeed, similar to the president, director and shareholder litigant in *Anmaco, Inc. v.Bohlken* (1993) 13 Cal. App. 4th 891, MURILLO is required by ACCU's bylaws to obtain approval from the Board of Director before engaging counsel. Because ZOU is no longer involved in ACCU's management since late 2021, and the bylaws' requires that all board actions must be approved with a majority of the directors present constituting a quorum(Ex. 11, p.62 for ACCU Bylaws, Article II, Section 14), MURILLO could not secure the required board approval prior to filing this lawsuit and retaining counsel in ACCU's name for this litigation. As such, this

action should be summarily dismissed.

### B.   Opposing Party's Introduction

Elizabeth Zou's ("Zou") summary judgment motion should be denied because there is a core, outcome dispositive dispute of material fact:  whether Zou resigned as a director of plaintiff Accu Casting, Inc. ("Accu"). As shown herein, that issue is hotly disputed. For this reason alone, summary judgment cannot be granted. *See, e.g., Sonner v. Schwabe North America, Inc.,* 911 F.3d 989, 992 (2018).

Zou's primary claim is that "because" the filing of this suit in August, 2022 was not approved by the company's board of directors, it cannot be maintained. But conspicuously missing from Zou's papers is any proof - - much less even an allegation - - that Zou was a board member at the time the suit was filed. Indeed, she makes no such claim even in her counterclaims against the company (Dkt No. 36), nor does she seek any determination from the Court on this point.

The reality is that in the late summer of 2021, Zou resigned from her positions as CFO and board member of Accu, having previously, and without Accu's knowledge, assisted in forming a competitive company. Zou's contemporaneous communications - - a full year before this suit was filed - - to Raymond Murillo ("Murillo"), the President and CEO of Accu, confirm this point:

● In her August 31, 2021 email to Murillo she writes that "I agree that we need to continue to communicate on what action needs to be taken **now that I have resigned**". Exhibit J at p. 1; emphasis added.

● In her September 24, 2021 email to Murillo, she stated, "I told you that I was tired and had no confidence in continuing to do business without Mr. Li. **So, at that moment, I resigned. When I gave you my resignation, you got very excited**....") Exhibit J at p. 5; emphasis added.

● In her October 4, 2021 email to Murillo, she stated, "**My decision to resign** came after a long deliberation and careful consideration...". Exhibit J at p. 4; emphasis added.

These are party admissions and are binding on Zou now. *See* Fed. R. Evid. 801(d)(2). Put simply, Zou's own words confirm that she resigned from the Company.

Notwithstanding the unequivocal nature of these communications, the Court does not have to find that Zou resigned from her positions with Accu in order to deny Zou's motion. **As noted above, the motion must be denied for the simple reason that whether or not Zou resigned is a disputed material issue.** *See Adickes v. S.H. Kress & Co.,* 3988 U.S. 144 (1970). For this reason alone, the motion should be denied.

## II. FACTUAL BACKGROUND

### A. <u>Moving Party's Background</u>

#### <u>ZOU and MURILLO Are 50-50 Owners of ACCU</u>

ZOU and MURILLO are 50-50 are equal shareholders and directors of ACCU since its inception in 2014. Counterclaimant's Statement of Uncontroverted Fact("CUF") No.1, Ex. A & B.

Before being excluded MURILLO from the ACCU, ZOU serves as ACCU's chief financial officer and secretary. CUF No.2, Ex. A & B.

#### <u>The August 2021 Meeting</u>

During 2021, ACCU's long-time sourcing agent, Mr. Li retired and as result, ACCU lost its contact with the manufactory. Zou Decl., ¶ 7.

In August 2021, ACCU's owners, namely, ZOU and MURILLO had a meeting in which ZOU indicated to MURILLO that she wanted to resign her position as the vice president of the company. CUF No.3, Ex. E & F.

On August 30, 2021, MURILLO wrote a letter to ZOU on ACCU's behalf, stating that he "felt" the parties "had an agreement which was to accept your resignation of being Vice President." CUF No.4; Ex. F.

#### <u>ZOU and MURRILO Never Agreed on ZOU's Exit Plan</u>

On October 4, 2021, ZOU wrote a written proposal to MURILLO for her exit plan(i.e., resignation clauses). CUF No.5; Ex. G.

ZOU's written proposal contains three(3) clauses: (a) 50% profit sharing until ACCU's receipt of receivable balance; (b) equally distributing ACCU's assets(including the TD Fund) to the parties; and (c) cancelling the parties' business partnership. Ex. G.

MURILLO never responded to ZOU's 10-4-2022 proposal. CUF No.6.

**MURRILO Excluded ZOU from ACCU**

Since late 2021, ZOU has no access to ACCU's management, operation, cash reserves and bank accounts. CUF No.7.

On January 7, 2022, MURRILO filed a Statement of Information with California Secretary of State, naming himself as the sole officer and director of ACCU, filing of which was never consented by ZOU. CUF No.8; Ex. H.

Except for the Citi bank and TD Ameritrade accounts frozen by MURRILO, MURRILO has the exclusive access and control to ACCU's cash. CUF No.9.

**Excluding ZOU was Never Approved by ACCU's Board of Directors**

There has been no corporate minute, consent, resolution or written agreement signed by ZOU and MURRILLO indicating that ZOU ever agreed to resign as a director of ACCU. CUF No.10.

MURRILLO's action to remove and block ZOU from ACCU was never voted upon or approved by ACCU's shareholders or board of directors. DUF No.11.

Prior to filing of this lawsuit, no shareholder or director's meeting of ACCU ever took place to vote on retaining ERVIN COHEN & JESSUP LLP. DUF No.12.

**B.** **Opposing Party's Background**

Accu is a California corporation in good standing that was formed in 2014. It is in the business of distributing cooking equipment such as cast iron burners, top grates, and die cast knobs to restaurants and retail customers. Thus, Accu distributes to restaurant equipment distribution companies and wholesalers products such as cast iron burners, top grates and die cast knobs, which are used by restaurants for meal preparation. Declaration of Raymond G. Murillo ("Murillo Decl."), at ¶ 5, lines 2-3.

Murillo is the President and CEO of the company and its sole director. Murillo Decl. at ¶ 2. Murillo and defendant Zou are the only shareholders of Accu and each of them own 50% of the shares in the company. Murillo Decl. at ¶ 5.

At all times since its founding in 2014, the Company has maintained corporate by-laws. A true and correct copy of those by-laws is attached as **Exhibit I** to the Joint Evidentiary Appendix ("Appendix"). Under those bylaws, a board member may resign merely by giving written notice thereof. Exhibit I at Article II, Section 19. The bylaws also provide for the sole remaining board member to fill the vacancy created by the resignation of his co-board member. Fd. at Article III, Section 5.

Prior to her resignation in late summer, 2021, Zou was a board member and the company's CFO and Secretary. Zou's role was also to manage the company's finances and to interface with the foundries in China which manufactured the commercial restaurant products that Accu distributed. Murillo Decl. at ¶5.

In late 2021, Zou resigned from her positions as Accu's CFO and board member. Murillo Decl. at ¶ 6. She announced her resignation as Accu's CFO and as a board member to Murillo orally at their stockholders meeting on August 25, 2021. *Id.* At that meeting, Murillo accepted Zou's resignation. Zou also confirmed her resignation in several email communications she thereafter sent to Murillo. *Id.* Those communications are collectively attached as **Exhibit J** to the Appendix.

As a consequence of her resignation, and by operation of Article II, Section 19 of the company's bylaws, Zou was no longer a director by late summer, 2021. In this regard, the company's bylaws also provide that upon the resignation of one of two directors, the remaining director automatically becomes the sole director of the company. Bylaws (Exhibit I), Article III, Section 5. Murillo Decl. at ¶ 7. In such a circumstance, no consents, resolutions or other formal board or shareholder actions are required to effectuate a board member's resignation.

In her declaration, Zou alleges that she was "excluded" by Murillo from the company's affairs and Murillo "removed" or "blocked" her from involvement with

Accu. These allegations are false. Zou voluntarily resigned from Accu and Murillo never "excluded", "removed" or "blocked" her from having involvement in the company's affairs. Indeed, in the aftermath of her resignation, Zou was concerned that she might have continuing liability from her roles as director and CFO. In that regard, on August 31, 2021, she wrote to the company's accountant and urged him to file the necessary papers to remove her from any further connection with the company. Murillo Decl. at ¶ 8. A copy of that letter is attached hereto as **Exhibit K** to the Appendix.

Zou makes a number of allegations concerning the company's deposit accounts. For example, she alleges that following her resignation, she had no access to the company's deposit accounts. This statement is false. Indeed, following her resignation, Zou continued to write checks for personal expenses on the company's accounts. For example, in December, 2021, Zou caused Citibank to issue a cashier check from an Accu account in the amount of $10,000 to the "Yang law firm" (Murillo Decl. at ¶ 11 and Exhibit L thereto). Then in February 2022, Zou wrote check #1055 in the amount of $10,000 from Accu's East West Bank account to "Los Angeles Commercial Attorney" – her present litigation counsel. (Murillo Decl. at ¶ 11 and Exhibit M thereto).[1]

These expenditures, which were unauthorized, represented payments to lawyers retained by Zou for the purpose of suing the company. Murillo Decl. at ¶ 11. True and correct copies of these checks are attached as **Exhibits L** and **M** to the Appendix.

Another allegation that Zou makes is that Murillo gave instructions to TD Ameritrade and Citibank to freeze those company accounts. Murillo did this after Zou's resignation to protect the company's assets in circumstances where Zou

---

[1] LA Commercial Attorney is the law firm that is presently representing Zou against Accu in this case. See Dkt No. 36.

1  continued to have signature authority over those accounts and used that signature
2  authority to make personal and unauthorized disbursements from those accounts.
3  Indeed, following her resignation, Zou was involved in setting up a competing
4  company (ICEMC), with her son as the "President" of this company. Murillo's efforts
5  to instruct Citibank and TD Ameritrade to freeze the two accounts was in furtherance
6  of his duties to the corporation. Murillo Decl. at ¶ 12.

## III.  LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Where the party moving for summary judgment would not bear the burden of proof at trial, the moving party "must produce either evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

## IV.  MOVING PARTY'S ARGUMENT

### A.  ACCU's Bylaws Requires Board Approval from Its Board of Directors Prior to Filing Lawsuit.

According to ACCU's bylaws, MURILLO must obtain board approval before engaging counsel to file this lawsuit using ACCU's name.

The corporation's bylaws(Ex.11)[2] states in relevant part that:

Article II, Section 1(Ex. 11, p.58):

The business and affairs shall be managed and all corporate powers

_____

[2] To avoid duplicative exhibits and in the interest of judicial economy, Defendant will be referring to ACCU's undisputed bylaws labeled as Ex. 11 in Plaintiff ACCU's motion for summary adjudication.

1  shall be exercised by or under the direct of the Board of Directors.

2  Article II, Section 14(Ex. 11, p.62):

3  A majority of the number of Directors shall be necessary to constitute a

4  quorum for the transaction of business, and the action of a majority of

5  the Directors present at any meeting at which there is a quorum, when

6  duly assembled, is a valid as a corporate act.

7  Article III, Section 7(Ex. 11, p.64):

8  President's power is "subject to the control of the Board of Directors."

9  Article VI, Section 5(Ex. 11, p.75):

10  No officer, agent or employee, shall have any power or authority to

11  bind the corporation by any contract or agreement, or to pledge its

12  credit, or to render it liable for any purpose or to any amount.

13  Evidently, ACCU's bylaws subjects the authority of its officers to the control

14  of the board of directors. Because no officer has the power to enter into contracts or

15  execute other instruments or render ACCU "liable for any purposes or any amount"

16  without authorization from the Board of Director, the decision to prosecute this action,

17  including retaining ERVIN COHEN & JESSUP LLP in this case, must be first

18  approved by ACCU's Board of Directors. *See* Ex. 11, p.75.

19  **B.** **MURILLO Lacks Authority to Bring This Lawsuit on Behalf of**

20  **ACCU.**

21  A summary judgment should be granted because MURILLO does not have

22  authority to bring this lawsuit against the other equal shareholder/director(i.e., ZOU)

23  in the name of ACCU. The undisputed facts in this case are:

24  • ZOU and MURILLO are equal shareholders and directors at ACCU.

25  (CUF Nos. 1-2; Ex.A & B)

26  • There has been no corporate minute, consent, resolution or written

27  agreement signed by ZOU and MURRILLO indicating that ZOU ever

28  agreed to resign as a director of ACCU. (CUF No.10).

- ZOU was ousted by MURILLO from ACCU. (CUF Nos. 7-9; Ex.H)
- MURILLO's removal of ZOU from ACCU was never voted upon or approved by ACCU's shareholders or board of directors. (CUF No.11).
- No shareholder or director's meeting of ACCU ever took place to vote on retaining ERVIN COHEN & JESSUP LLP. (CUF No.12).

California Appellate Court's decision in *Anmaco*, 13 Cal. App. 4th 891, 901 is on-point because it was decided based on similar facts involving two 50-50 shareholders in a closely-held corporation and more importantly, a corporate bylaws that is highly identical to ACCU's bylaws. (Ex. 11)

In *Anmaco*, a suit was brought in the name of the corporation by one of its shareholder against the other shareholder. *Id.* at pp. 898-899. The appellant in the case is, similar to MURILLO, the president, director and a 50% shareholder of the corporation who purports to have "general supervision, direction and control of the business and officers of the corporation" under the corporation's bylaws[3]. *Id.*

However, the *Anmaco* Court found that the corporation's bylaws imposed restriction on the president/director's purported authority to file suit for behalf of the company:

> "The bylaws also provide that the president's exercise of his office is subject to the control of the Board of Directors...." The bylaws further state: "The business and affairs of the corporation shall be managed and all corporate powers shall be exercised by or under the direction of its Board of Directors. The president does not have the power to enter into contracts or execute other instruments or render the corporation "liable for any purposes or any amount" without board authorization." *Id.*

Based on review of the corporation's bylaws and finding of "restrictions on the power of the corporate officers", the *Anmaco* Court held that the appellant has "no power to institute litigation in the corporate name against the other 50 percent

---

[3] *See also* ACCU's bylaws, Article III, Section 7: "the President,…., subject to the control of the Board of Directors, have general supervision, direction and control of the business and officers of the corporation." (Ex. 11. P.64)

shareholder." *Id*. at pp. 898-899.  It was further concluded that "[t[he proper vehicle for such a suit, when the gravamen of the complaint is injury to the corporation, is a shareholder's derivative action." *Id*. at p. 900.

In addition to the *Anmaco* decision, courts in different states have made similar rulings that a shareholder should only initiate a derivative proceeding in the event of deadlock between the shareholders. *See e.g. Stone v. Frederick*, 245 A.D.2d 742, 666 N.Y.S.2d 294, 295 (N.Y.App.Div.1997) ["[W]here there are only two shareholders each with a 50% share, an action cannot be maintained in the name of the corporation by one stockholder against another with an equal interest and degree of control over corporate affairs; the proper remedy is a stockholder's derivative action."]; *Borkowski MBI v. Fraternal Order of Police*, 155 F.R.D. 105, 110 (E.D.Pa.1994) ["The proper vehicle for a suit, when the gravamen of the complaint is injury to the corporation, and the shareholders are deadlocked, is a shareholder's derivative action."]; *Gross v. Adcomm, Inc.* 478 S.W.3d 396, 404(Ky. Ct. App. 2015)[Finding that when a 50% owner of a corporation could authorize a corporation to file suit, then by parity of reasoning the other 50% owner could compel the same corporation to either dismiss the suit.]

Here, similar to *Anmaco*, ACCU's bylaws placed clear restriction on MURILLO's authority to institute lawsuits, engage counsel, utilize ACCU's funds in this litigation, and any act that would render ACCU "liable for any purposes or any amount." (Ex. 11, p.75)

Under ACCU's bylaws, all such corporate acts must be approved by the board of director with a majority of the directors present constituting a quorum. (Ex. 11, p.62) Indeed, a board's action is legally invalid if taken when no quorum is present. *Santandrea v. Siltec Corp.* (1976) 56 Cal. App. 3d 525, 528[informal approval by two corporate directors did not validate alleged corporate action]; *Gieselmann v. Stegeman*(Mo. 1969) 443 S.W.2d. 127, 135-136[so-called meeting of corporate directors, held without notice or quorum, was illegal.]  Given the undisputed fact that

1  ZOU has no access and is no longer involved in ACCU's management since late
2  2021(CUF No. 7), MURILLO does not and could not obtain any board approval or
3  consent to commence this lawsuit.

4      As stated, there has been no corporate minute, consent, resolution or written
5  agreement signed by ZOU and MURRILLO indicating that ZOU ever agreed to resign
6  as a director of ACCU.  (CUF No.10).

7      To the contrary, the evidence shows that MURILLO admitted in his August 26,
8  2021 email that ZOU "wanted to resign"(Ex. E), and subsequently in his 8-30-21 letter
9  that he felt the parties an agreement about ZOU's "resignation of being Vice
10  President" in ACCU. CUF No. 4; Ex. F.  In other words, ZOU *did not* resign as a
11  director in ACCU, a fact of which was acknowledged by MURILLO. *Id*.

12      The evidence further shows that ZOU made written proposal of "resignation
13  clauses" to MURILLO in October 2021, but MURILLO never responded to ZOU's
14  proposal. CUF Nos. 5 & 6; Ex. G. As such, the parties never come to terms as to
15  ZOU's exit or resignation from ACCU.

16      Accordingly, because MURILLO fails to obtain proper authority to prosecute
17  or maintain this lawsuit in the name of ACCU, this lawsuit should be summarily
18  dismissed. Pursuant to the cited legal precedents, when there exists a shareholder
19  deadlock, the proper avenue of remedy is shareholder derivative lawsuit. *Anmaco,* 13
20  Cal. App. 4th 891, 900. It is, thus, respectfully submitted that the Court grant the
21  requested summary judgment.

22  **V.    OPPOSING PARTY'S ARGUMENT**

23      Lurking underneath Zou's moving papers – she never states this outright -- is
24  the innuendo that she never resigned from the Company's board, but instead was
25  somehow "ousted" from her board and officer positions. *See* Zou's Separate
26  Statement of Undisputed Facts at ¶¶ 2 and 5. But, as with most of Zou's moving
27  papers, her declaration is entirely silent on this point. For this reason, the Court is
28  entitled to disregard this claim. *See Orr v. Bank of America, NT & SA*, 285 F.3d 764,

773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."); *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (nonmoving party "cannot defeat summary judgment . . . with unsupported conjecture or conclusory statements").[4]

Contrasted with Zou's failure to come forward with any evidence about being "ousted", Zou's own emails demonstrate that in late 2021 she *resigned* from the Company. Murillo Decl. at ¶ 6 and Exhibit J. Moreover, her own emails thoroughly rebut her unsupported innuendo that she was "ousted", thereby creating yet another disputed issue of material fact.

### A. The *Anmaco* Decision Is Inapplicable Where, As Here, Accu Had A Sole Director At The Time This Lawsuit Was Filed

In her moving papers, Zou relies heavily on the decision in *Anmaco v. Bohlken,* 13 Cal. App. 4th 891 (1993) for the proposition that Murillo does not have the ability to sue in the Company's name. The *Anmaco* decision is inapposite because it rested on a key feature not present in the case at bar.

In *Anmaco*, the corporation was governed by two directors who were at loggerheads. The key question in that case was whether one of those directors, who was also the president of a corporation, could bring a suit against the other director, who was also a 50% shareholder.

The decision in *Anmaco* did not turn on the fact that the target of the company's suit was a 50% stockholder. It turned instead on whether the deadlock at the board level precluded the corporate president from bringing the lawsuit on the corporation's behalf. *Anmaco* at 898-900.

In this regard, the Court relied on authority having to do with deadlock at the

---

[4] Zou's claim that she was "ousted" from her board and officer positions is further undermined by the fact that her pending counterclaims fail to assert any such claim. As such, they are waived. *See Dragor Shipping Corp.*, 378 F.2d at 244.

board level, not the shareholder status of the target of the company's suit. Thus, the court cited as precedent those authorities dealing with the exercise of executive power where there is corporate deadlock. *Id.* Notably, the *Anmaco* Court "express[ed] no view on the president's power to institute or defend litigation in an emergency or involving an outsider. or where the bylaws may grant the power to do so." *Id.* at 900 n.2.

This factual context in *Anmaco* is far cry from the case at bar. In this case, it is clear - - from her own words - - that Zou resigned from the Company in **2021**. In the wake of her resignation, Murillo became the sole director of the Company as provided under the Company's bylaws, Exhibit I. There was thus no board "deadlock" at the time this suit was filed in **2022** that could have theoretically affected Murillo's entitlement to bring suit on behalf of the Company.[5]

Courts in similar circumstances have permitted the sole active officer and director to initiate litigation on behalf of the corporation. For example, *Rothman & Schneider, Inc. v. Beckerman,* 2 N.Y.2d 493, 499 (1957), involved a closely-held company directed by two individuals, a president and secretary-treasurer. Following the retirement of the corporation's president, the court held that the "company's only active officer was authorized to institute and prosecute" a lawsuit against the retired president's son. *Id.*; *see also Storix, Inc. v. .Iohnson,* 2020 WL 7777493, at *7 (Cal. Ct. App. Dec. 31; 2020) (unpublished) (distinguishing *Anmaco* based on absence of

---

[5] The out of state cases cited by Zou on this point are similarly inapposite. Unlike the present case, each of Zou's cited cases involved the absence of board authorization to proceed with litigation. *Stone v. Frederick,* 245 A.D.2d 742, 745 (1997) (discussing shareholders "with an equal interest and degree of control over corporate affairs."); *Borkowski MBI v. Fraternal Order of Police,* 155 F.R.D. 105, 110 (E.D.Pa. 1994) (president of closely held corporation did not have right to sue in his capacity as president when there was deadlock between two 50-50 shareholders who also served as board of directors); *Gross v. Adcomm, Inc.,* 478 S.W.3d 396, 404 (Ky. Ct. App. 2015) (same).

1 deadlock and finding that "[t]he majority board had the authority to bring a lawsuit to
2 recover for the corporation's damages allegedly caused by one of the
3 shareholders/directors.").

4      **B.**    **Because There Are Disputes As To Material Factual Issues,**
5               **Especially Whether Zou Resigned As A Board Member, Summary**
6               **Judgment Should Be Denied**

7     Where there is a dispute of a material fact, summary judgment must be denied.
8 *See* F.R. Civ. Proc. 56 (a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

9     Here Zou claims that Murillo cannot bring suit in the company's name. Her
10 argument rests on the innuendo in her papers that "because" she was a company
11 director in August, 2022 and did not authorize the filing suit, the suit should be
12 dismissed.[6]

13     But her core contention – that she was a director of the company at the time
14 this suit was filed – is hotly disputed. And since her motion turns on whether she
15 resigned from the company's board, summary judgment cannot possibly be granted.
16 *See Anderson, supra,* 477 U.S. at 255.

17     It is basic that the existence of disputed material facts preclude the entry of
18 summary judgment. Here the disputed material fact – whether Zou resigned her board
19 seat - is core to Zou's motion. As that factual dispute cannot be resolved in connection
20 with this motion, her motion must be denied.

21      **C.**    **In The Event The Court May Be Inclined To Grant The Motion, It**
22               **Should Not Enter ZOU'S Proposed Judgment, But Should Instead**
23               **Allow The Case To Proceed As A Derivative Action**

24

25 [6] We have noted above that Zou never actually comes out and says that she was in
26 fact a board member at the time this suit was filed in August, 2022. This omission is
fatal to her ability to pursue this motion: it entirely undermines her reliance on
27 *Anmaco* which involved a close corporation having **two sitting directors at the**
28 **time the pertinent suit was filed**.

Even if the Court were inclined to grant Zou's motion it should not enter Judgment in Zou's favor. This is because her proposed Judgment could have preclusive effect as to a future derivative suit against Zou that Murillo may wish to bring on the company's behalf.

As Zou's Notice of Motion fails to give notice that the relief she seeks includes an order barring any future derivative actions against her, the Court lacks jurisdiction to enter the proposed Judgment. Instead. and even if the Court is included to grant Zou's motion, it should allow Murillo to amend his complaint to refile the action as a derivative action on behalf of the company.

Doing otherwise would effectively release Zou from her conduct that has damaged the company. For this reason, the Court should refrain from entering the proposed Judgment lodged by Zou even if it were inclined to grant her motion.

### D.  <u>Because Of Its Pervasive Non-Compliance With The Court's Rules, Zou's Declaration Should Be Stricken</u>

The Court should strike Zou's moving papers because of their pervasive non-compliance with the Court's rules. The following instances are merely illustrative; they are not exhaustive.

•  *The submission of testimony that has nothing to do with any of the issues pertinent to this motion.*

The Court's Civil Standing Order provides in part that "[n]o party shall submit evidence other than the specific items of evidence or testimony necessary to support or controvert a proposed statement of undisputed fact". *Id*. at p. 11, lines 26-28.

Despite this Court rule, Zou introduces testimony about Accu's profitability and officer salaries (Zou Decl. at ¶ 3); its payroll and cash balances (Zou Decl. at ¶ 4); dividends (Zou Decl. at ¶ 5); her alleged stock-picking ability (Zou Decl. at ¶ 6); and irrelevant details about her dealings with foundries in China (Zou Decl. at ¶ 7).

None of these matters have the slightest relevance to any issues pertinent to Zou's motion and their gratuitous inclusion violates the Court's rules. Accordingly,

Zou's declaration should be stricken.

• *The purported introduction of exhibits that are not even attached to Zou's moving papers.*

In her declaration, Zou identifies and purports to introduce into evidence two exhibits - - Exhibit C (certain tax reporting documents) and Exhibit D (a February, 2020 bank statement). Unaccountably, neither of these exhibits is actually attached to her moving papers. How these missing documents (whose contents are wholly undisclosed) are relevant to any conceivable issue presented by Zou's motion is never explained.

• *The presentation of conclusions that are unsupported by any facts.*

Throughout her declaration, Zou puts forward conclusions such as she was "ousted" by Murillo (Zou Decl. at ¶ 2); she was "excluded" from her roles at Accu (Zou Decl. at ¶ 2); and that "Murillo blocked me from accessing Accu's management, operation [sic], cash reserves and bank accounts" (Zou Decl. at ¶ 9).

All of these statements are mere conclusions which are unsupported by any facts. In this regard, it is basic that factual averments in a party's memorandum must be supported by citations to the factual record. Fed. R. Civ. P. 56(c)(1)(A); *see Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1116 (9th Circuit 2003) ("conclusory allegations, unsupported by facts, are insufficient to survive a motion for summary judgment"). Here, Zou's moving papers make claims having no support in the factual record. For this reason, those statements should be disregarded by the Court and Zou's non-compliant declaration should be stricken. *See Brew v. City of Emeryville*, 138 F. Supp. 2d 1217, 1226–27 (N.D. Cal. 2001).

## VI. CONCLUSION

### A. <u>Moving Party's Conclusion</u>

Based upon the foregoing, it is respectfully requested that Defendant and Counter-Claimant Elizabeth Yunhong Zou's Motion for Summary Judgment be granted.

**B.    Opposing Party's Conclusion**

For the foregoing reasons, the Court should deny Zou's motion for summary judgment.

**MOVING PARTY'S REPLY**

**I.    THE UNDISPUTED FACTS**

Pursuant to the parties' Statement of Uncontroverted Facts concurrently filed, the following facts are undisputed:

i.    Five days after the 8/25/21 meeting, Murillo wrote to Zou on ACCU's behalf, stating that he "felt" the parties "had an agreement which was to accept your <u>resignation of being **Vice President**</u>." (CUF No. 4; Ex. F)

ii.    Subsequently, on October 4, 2021, Zou wrote a written proposal to Murillo for her exit plan(i.e., resignation clauses). (CUF No. 5; Ex. G)

iii.    Murillo never responded to Zou's 10-4-2021 proposal. (CUF No. 6)

iv.    ACCU's 1-7-22 Statement of Information filed by Murillo in which he named himself as "sole director" was not consented by Zou. (CUF No. 8)

v.    To date, Murillo has exclusive access and control of ACCU's cash except for the Citi and TD Ameritrade accounts frozen by Murillo. (CUF No. 9)

vi.    There has been no corporate minute, consent, resolution or written agreement signed by Zou and Murillo indicating that Zou ever agreed to resign as a director of ACCU.  (CUF No. 10)

vii.    Prior to filing of this lawsuit, no shareholder or director's meeting of ACCU ever took place to vote on retaining ERVIN COHEN & JESSUP LLP. (CUF No. 12)

**II.    THE DISPUTED FACTS**

While conceding that Murillo and Zou have been equal shareholders and directors at ACCU before their dispute in 2021, ACCU/Murillo contends that Zou resigns in November 2021, and that ACCU has no vice president.

## III.   ARGUMENT

### A.   Article II, Section 19 of ACCU's Bylaws Requires Director's Resignation Notice to be Submitted in Writing, and It Cannot be Made Verbally.

ACCU argues that there is no deadlock at the board level when this case was filed because "Zou resigned in 2021" and that Murillo is purportedly the sole director in ACCU. In support, ACCU alludes to an alleged verbal request made by Zou to Murillo during the August 25, 2021 meeting.

However, such purported verbal request is immaterial because ACCU's bylaws, Article II, Section 19 mandates that "**director may resign effective upon giving written notice**…" *See* Exhibit I, p. 7. The written notice requirement similarly applies to resignation of officer(i.e., Article III, Section 4). *Id.*

Here, as conceded by ACCU in its opposition, there has never been any written resignation notice submitted by Zou to resign as a director in the company. Without satisfying the written resignation notice requirement under Article II, Section 19 of ACCU's bylaws, Zou has not and could not have resigned as a director or board member. As such, a purported dispute concerning whether Zou made an alleged verbal request to resign as a director is inconsequential and should not preclude the granting of summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001)[Disputes over irrelevant or unnecessary facts the resolution of which would not affect the outcome of the suit are irrelevant to the Court's consideration in granting summary judgment].

Given ACCU's failure to show that Zou ever resigned in accordance with the mandated procedure under its bylaws, it is submitted that Zou's Motion should be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325(1986)["[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."]; *also Arpin*, 261 F.3d at 919["The mere existence of a scintilla of evidence in support

of the non-moving party's position is not sufficient" to preclude summary judgment].

## B. The *New* Alleged Dispute Re: "Vice President" Argument Does not Present a Genuine Issue of Material fact.

Murillo's contention that ACCU does not have vice president is a red-herring and does not present a genuine issue of material fact.

As discussed, since there does not exist any written resignation notice made by Zou in compliance with Article II, Section 19 of ACCU's bylaws, Zou could not have resigned as a board member/director. Thus, whether ACCU had vice president, whether Zou was a vice president, or whether Zou resigned as a vice president is inconsequential for purpose of this motion.

Moreover, Murillo's assertion represents his personal speculation without evidentiary support. *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp*., 594 F.2d 730, 738 (9th Cir. 1979)[ Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.]; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)[more than a "metaphysical doubt" is required to establish a genuine issue of material fact].

Further, this assertion only serves to mislead the Court. It is an *undisputed* fact that Murillo admitted on the August 30, 2021 letter that Zou resigned "of being Vice President" of ACCU, not as a board member/director. (CUF No. 4; Ex. F). Besides Murillo's admission to the 8-30-21 letter, the very first email in Exhibit J is Zou's email response to Murillo's August 30, 2021 letter["Regarding your Aug 30, 2021 email (attached), I agree that we need to continue to communicate on what actions needs to be taken now that I have resigned"]. *See* Exhibit J, pp. 2-3.

Likewise, the Court should take judicial notice that ACCU admitted in its evidence in support of its Motion for Summary Adjudication(Dkt. No. 77; Exhibit 9, p.44) that Zou is ACCU's Vice President. Murillo further signed the same document along with Zou being the "Vice President" of ACCU on 2/25/2020 (Dkt. No. 77; Exhibit 9, p.52). Consistently, ACCU's bylaws expressly allow for a vice president

position. *See i.e.*. Sections 1 & 8 of Article III(Ex. I, pp.7-8).

In sum, Murillo's new assertion is self-contradictory, lacks factual support, and should be properly disregarded as immaterial. *Anderson*, 477 U.S. at 248 ["Factual disputes that are irrelevant or unnecessary will not be counted."].

### C. ACCU's "Irrelevant" Objection to Zou Declaration is Improper.

ACCU's final argument is that the moving party's declaration should not be considered because it contains irrelevant information.

But the function of motion for summary judgment is to determine whether there is relevant evidence. Courts in this Judicial District have consistently ruled that objection to evidence based on relevance is improper because such objection "[is] duplicative of the summary judgment standard itself", "redundant" and thus, unnecessary to consider. *See Katzkin Leather, Inc. v. Roadwire, LLC*, CV 20-2093 DSF (RAOx) (C.D. Cal. May 6, 2022), at *7, citing *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); *Eidem v. Target Corp.*, Case No. EDCV 10-01000 VAP(DTBx) (C.D. Cal. Aug. 24, 2011), at *5["Both sides cite facts that are not relevant to resolution of the Motion. To the extent certain facts are not mentioned in this Order, the Court has not relied on them in reaching its decision."].

Furthermore, ACCU fails to submit any statement of genuine disputes, which allows the Court to assume moving party's material facts are adequately supported. *See* Local Rule 56-3["In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the "Statement of Genuine Disputes" and (b) controverted by declaration or other written evidence filed in opposition to the motion."]

Finally, Zou's contention that she was excluded or ousted by Murillo is supported by at least two *undisputed* facts. It is undisputed that Murillo named himself as ACCU's sole director in the company's 1-7-22 Statement of Information, filing of

1  which was never consented by Zou. (CUF No. 8, Ex. H). It is also undisputed that

2  Murillo has exclusive access and control to ACCU's cash except for the Citi bank and

3  TD Ameritrade accounts frozen by Murillo. (CUF No. 9).

## IV.  MOVING PARTY'S REPLY CONCLUSION

According to mandated requirements under Article II, Section 19 of ACCU's
bylaws, Zou did not resign as a director.  Thus, Zou is an equal shareholder/director
in the company. Following the legal principles illustrated in *Anmaco.,*13 Cal. App.
4th 891, and the mandated requirements under ACCU's bylaws, Murillo, before
engaging counsel to file suit in the name of ACCU, is required to obtain approval with
a majority of the directors present constituting a quorum. In light of Murillo's lack of
authorization from the board of director to engage counsel and to initiate this lawsuit
on ACCU's behalf, this Action should be summarily dismissed.

Respectfully submitted,

DATED:  April 20, 2023        L.A. COMMERCIAL ATTORNEY, A PROF.
                              LAW CORP.


By:  /s/Christopher D. Lee
     Christopher D. Lee
     Attorneys for Defendant/Cross-Complainant
     ELIZABETH YUNHONG ZOU


DATED:  April 20, 2023        ERVIN COHEN & JESSUP LLP
                              Peter S. Selvin
                              Zoe M. Vallier

By:  /s/ Peter S. Selvin
     Peter S. Selvin
     Attorneys for Plaintiff and Counter-
     Defendant ACCU CASTING CO. INC.