O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACCU CASTING CO. INC., a California corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ELIZABETH YUNHONG ZOU, an individual; ICEMC, INC., a California corporation; CITIBANK, N.A., a National Banking Association; TD Ameritrade, a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>　　　　Defendants.<br><br>ELIZABETH YUNHONG ZOU, an individual,<br><br>　　　　Counter-claimant,<br><br>　　v.<br><br>ACCU CASTING CO. INC., a California corporation; RAYMOND G. MURILLO, an individual,<br><br>　　　　Counter-defendants. | Case No. 2:22-cv-05377 MEMF (AFMx)<br><br>**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 70, 92]** |

Before the Court are a Motion for Summary Judgment filed by Plaintiff Accu Casting Co. Inc. (ECF No. 70) and a Motion for Summary Judgment filed by Defendant and Counterclaimant Elizabeth Yunhong Zou (ECF No. 92). For the reasons stated herein, the Court DENIES both Motions for Summary Judgment.

## I.  Background

### A.  Factual Background

Plaintiff Accu Casting Co. Inc. ("Accu Casting") is a corporation founded by Defendant and Counterclaim Plaintiff Elizabeth Yunhong Zou ("Zou") and Counterclaim Defendant Raymond Murillo ("Murillo"). Zou and Murillo are each 50% shareholders. A rift arose between Zou and Murillo in 2021, and this litigation addresses the fallout from that rift. Murillo alleges that Zou resigned from the company, while Zou alleges that Murillo improperly ousted her from the company. In addition, a bank account established before the rift occurred is still controlled by Zou. The parties dispute the purpose of this account, how it should be characterized, and to whom its funds belong. Furthermore, Zou alleges that because she has not formally resigned from the company, Murillo has no authority to bring this suit against her on Accu Casting's behalf.

### B.  Procedural History

Accu Casting filed suit in this Court on August 2, 2022, against Zou, Defendant ICEMC, Inc. ("ICEMC"); Defendant Citibank, N.A. ("Citibank"); TD Ameritrade, and Does 1 through 10. ECF No. 1. Accu Casting filed a First Amended Complaint on September 23, 2022, alleging sixteen causes of action against Zou, ICEMC, Citibank, and TDA, including trademark infringement and related claims, breach of fiduciary duty, fraud, and other claims, the details of which are largely irrelevant to this Order. ECF No. 27 ("FAC"). One cause of action is relevant here: in its thirteenth cause of action, Accu Casting seeks a declaratory judgment that "the funds in TD Ameritrade account 497-572779 are [Accu Casting's] property" and that the funds should be released to Accu Casting. FAC ¶¶ 146–151.

Zou filed an Answer and Counterclaims on October 17, 2022.[1] ECF No. 41. Zou asserted four counterclaims and nineteen affirmative defenses. *See id.* On November 7, 2022, Accu Casting filed a Motion to Dismiss Zou's counterclaims and a Motion to Strike Zou's affirmative defenses. ECF Nos. 49, 50. The Court denied the Motion to Dismiss and granted in part the Motion to Strike. ECF No. 105

On February 2, 2023, Accu Casting filed its Motion for Summary Judgement. ECF No. 70 ("Accu Motion" or "Accu Mot."). Accu Casting seeks summary judgment on its thirteenth cause of action, for declaratory relief that the funds in the TD Ameritrade account belong to Accu Casting and should be released to Accu Casting. *See id.* In accordance with the requirements of the Court's Standing Order, the Accu Motion was jointly briefed by Accu Casting and Zou. Accu Casting also filed a Statement of Uncontroverted Facts. ECF No. 71. Zou responded with a Statement of Genuine Dispute, and her own Statement of Uncontroverted Facts in Opposition. ECF No. 72; ECF No. 73. Accu Casting then filed a Separate Statement in Response to Zou's Statement of Uncontroverted Facts. ECF No. 74. The parties then filed a joint Statement of Uncontroverted Facts. ECF No. 75. The parties filed an Appendix containing evidence. ECF No. 76. Accu Casting filed objections to certain evidence cited by Zou. ECF No. 77.

On April 20, 2023, Zou filed her Motion for Summary Judgment. ECF No. 92 ("Zou Motion" or "Zou Mot."). Zou seeks summary dismissal of all of Accu Casting's claims, on the purported grounds that Murillo did not have authority under Accu Casting's Bylaws to hire counsel and bring a suit on Accu Casting's behalf. *See id.* The Zou Motion was jointly briefed by the parties. *See id.* Zou filed a Statement of Uncontroverted Facts. ECF No. 93. Accu Casting filed a response to Zou's Statement of Uncontroverted Facts. ECF No. 98. The parties filed a Joint Statement of Uncontroverted Facts. ECF No. 94. The parties filed an additional Appendix containing evidence. ECF No. 95. Zou filed objections to certain evidence cited by Accu Casting. ECF No. 96. Accu Casting filed objections to certain evidence cited by Zou. ECF No. 97.

---

[1] Zou filed an earlier version of her Answer and Counterclaims on October 11, 2022, ECF No. 32, which appears to be identical but is missing exhibits included in the later version.

The Court held a hearing on the Motions for Summary Judgment on October 19, 2023.

**II.    Applicable Law**

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). "A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To carry its burden of production, the moving party must either: (1) produce evidence negating an essential element of the nonmoving party's claim or defense; or (2) show that there is an absence of evidence to support the nonmoving party's case. *Id.*

Where a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial. *Id.* at 1102–03. In such cases, the nonmoving party may defeat the motion for summary judgment without producing anything. *Id.* at 1103. However, if a moving party carries its burden of production, the burden shifts to the nonmoving party to produce evidence showing a genuine dispute of material fact for trial. *Anderson*, 477 U.S. at 248–49. Under these circumstances, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is no genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the motion for summary judgment shall be granted. *Id.* at 322 ("Rule

56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *See id.* "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. *Id.* 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Anderson*, 477 U.S. at 252. To carry its ultimate burden of persuasion on the motion, the moving party must demonstrate that there is no genuine issue of material fact for trial. *Nissan Fire*, 210 F.3d at 1102; *Celotex Corp.*, 477 U.S. at 323.

Where parties file cross motions for summary judgment on the same issue, the court must consider both motions and all evidence submitted by both parties. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). "[E]ach motion must be considered on its own merits." *Id.* Even if both parties assert that no genuine disputes of material fact exist, the court must still review the record and determine that there are no disputes of material fact before granting summary judgment to either party. *See id.*

/ / /

/ / /

/ / /

/ / /

/ / /

### III. Findings of Fact[2]

The Court finds the following material facts are established for trial under Federal Rules of Civil Procedure 56(a) and 56(g):

Accu Casting is a California Corporation that was formed in 2014. ECF No. 75 ¶ 1. Murillo and Zou are the sole shareholders in Accu Casting, and each own 50% of the company. *Id.* ¶ 3. Murillo was, and still is, Accu Casting's CEO and a director. *Id.* ¶ 2. Upon formation, Zou was Accu Casting's CFO and a director. *Id.* ¶ 5.

#### A. The TD Ameritrade account

On March 6, 2020, Zou opened an account with TD Ameritrade in Accu Casting's name. *Id.* ¶ 6. The TD Ameritrade account was funded with $300,000 (initially $200,000, with two additional deposits of $50,000) from Accu Casting's accounts. *Id.* ¶¶ 7, 9, 10. Zou managed the money in the account and invested it, and it had a balance of $403,705.80 as of the filing of the Accu Motion. *See id.* ¶¶ 7, 12. In November of 2022, the parties stipulated that the TD Ameritrade account would remain frozen absent a further court order. *Id.* ¶ 11.

#### B. Compensation from Accu Casting

From 2015 to 2019, Accu Casting paid Murillo and Zou, collectively: $16,000 in 2015; $15,000 in 2016; $69,120 in 2017; $87,120 in 2018, and $111,000 in 2019. ECF No. 74 ¶ 3. As of February 2020, Accu Casting had approximately $764,000 in its accounts, most of which was accumulated profits.

#### C. Zou departed from Accu Casting

---

[2] The facts set forth below are taken from the parties' various Statements of Uncontroverted Facts and the responses thereto, as described in the Procedure History above. To the extent that any purported facts are omitted, the Court concludes they are not material to the disposition of this Motion. To the extent that any of the facts set below were allegedly disputed by the opposing party, the Court concludes that no actual dispute exists or that the adopted language resolves the dispute.

In making these Findings of Fact, the Court considered Accu Casting's and Zou's evidentiary objections. ECF Nos. 76, 96, 97. The Court did not find any evidence that either party objected to essential to finding any fact stated herein, except where explicitly stated otherwise. The Court need not reach any objection except those addressed in this Order.

In August of 2021, Accu Casting's longtime sourcing agent, Mr. Li, retired, which led to strife between Murillo and Zou. ECF No. 94 ¶ 3.

On August 30, 2021, Murillo wrote a letter to Zou on Accu Casting's behalf stating that he "felt" the parties "had an agreement which was to accept your resignation of being Vice President." ECF No. 98 ¶ 4; *see also* ECF No. 77 at 140. On August 31, 2023, Zou wrote an email to Murillo that stated, "I agree that we need to continue to communicate on what action needs to be taken now that I have resigned." ECF No. 77 at 81. On September 8, 2021, Zou wrote an email to Murillo which stated: "I am tired with now work situation, I want to out from Accu Casting. You agreed on 8-25-2021 our meeting, and you want to continue Accu Casting, this is ok for me too." ECF No. 77 at 83 (phrasing in original). On September 24, 2021, Zou wrote an email to Murillo that stated, in describing a meeting in late August of 2021, "at that moment, I resigned . . . When I gave you my resignation, you got very excited and were very confident that you could continue ACCU Casting on your own." ECF No. 77 at 85. On October 4, 2021, Zou emailed Murillo with a written plan to "terminate the partnership."[3] ECF No. 77 at 142–143. Zou's email explained that "My decision to resign came after a long deliberation and carful [sic.] consideration. (see attached draft document for the resignation clauses)." *Id.* The attached document described distribution of Accu Casting's assets and a buyout. *Id.* Murillo never responded to this email. ECF No. 98 ¶ 6. Murillo and Zou never signed an agreement describing the terms of Zou's resignation. *See id.* ¶ 10.

**D. Corporate governance of Accu Casting**

Accu Casting's Bylaws state that any director "may resign upon giving written notice." ECF No. 77 at 64 (Article II, Section 19). Directors may also be removed by shareholder vote, written consent of shareholders, or court order. ECF No. 77 at 60 (Article II, Section 6).

The Bylaws also state that:

> The Board of Directors, except as in the By-Laws otherwise provided, may authorize any Officer or Officers, agent or agents, to enter into any contract or execute any instrument in the name of and on behalf of the corporation. Such authority may be general or

---

[3] Zou describes this as a written plan "for her exit plan (ie. resignation clauses)." ECF No. 93 at 5. Notably, the plan describes her resignation in the past tense as described above. ECF No. 77 at 142–143 ("My decision to resign came after a long deliberation").

confined to specific instances. Unless so authorized by the Board of Directors, no Officer, agent or employee shall have any power or authority to bind the corporation by any contract or agreement, or to pledge its credit, or to render it liable for any purpose or to any amount, except as provided in Sec. 313 of the Corporations Code.

ECF No. 77 at 76 (Article VI, Section 5).

The Bylaws also state that the President of Accu Casting shall be the CEO, and the President shall, "subject to the control of the Board of Directors, have general supervision, direction and control of the business." ECF No. 77 at 65 (Article III, Section 7).

No shareholder vote or board of directors meeting was ever held to remove Zou as a director or authorize the decision to retain counsel and initiate this lawsuit. *See* ECF No. 94 ¶¶ 10, 12.

On January 7, 2022, Murillo filed a statement with the California Secretary of State describing himself as the sole officer and director of Accu Casting. *Id.* ¶ 8.

## IV. Discussion

### A. Accu Casting's Motion for Summary Judgment (ECF No. 70) is denied.

Accu Casting seeks summary judgment on its thirteenth cause of action, which seeks a judicial declaration that (1) the funds in the TD Ameritrade account[4] belong to Accu Casting and (2) the funds should be released to Accu Casting. *See* Accu Mot.; FAC ¶¶ 146–151.

Accu Casting argues that the undisputed facts show that the money belongs to Accu Casting and that Zou has no personal interest in the money. *See* Accu Mot. at 14–18. Zou makes two arguments in response: (1) Murillo had no authority to bring this suit on Accu Casting's behalf and (2) if the funds were set aside for shareholder dividends, Zou would have an interest in them, and there is a dispute of fact as to whether this occurred. *See* Accu Mot. at 18–23.

As discussed below, the Court finds that disputes of fact preclude summary judgment, and the motion will therefore be denied.

    i. <u>There are factual disputes as to whether Zou resigned as a director.</u>

Zou argues that Murillo did not have authority to bring this suit against Zou, and that summary judgment to Accu Casting should be denied on this basis. *See* Accu Mot. at 18–22. Zou's

---

[4] At the hearing, Accu Casting's counsel briefly mentioned an additional account at Citibank. The Citibank account is not mentioned in Accu Casting's Motion and is therefore not relevant to this Order.

argument is based on the purported fact that Zou never resigned as a director, and thus that Murillo acted without the other director's consent. There are factual disputes that preclude the Court from ruling for either party on this issue, as will be discussed in greater detail in the section below on Zou's Motion for Summary Judgment. As to Accu Casting's Motion, the Court will not rule for Zou on this basis—that Zou purportedly never resigned and therefore Murillo did not have authority to bring suit—but nevertheless will deny Accu Casting's Motion for other reasons.

  ii. <u>The factual dispute as to the declaration of dividends precludes summary judgment.</u>

Individual shareholders typically do not have personal interests in the assets of a corporation. *See Union Bank v. Anderson*, 232 Cal. App. 3d 941, 949 (Ct. App. 1991) ("The shareholders of a corporation do not have legal title to the assets or capital of the corporation, have no right to the possession thereof, may not transfer or assign the properties or assets of the corporation nor apply corporation funds to personal debts") (quoting *In re Mercantile Guar. Co.*, 263 Cal. App. 2d 346, 352 (Ct. App. 1968)). Thus, Zou's status as a shareholder would not alone give her any interest in the money that belonged to Accu Casting. Nor would Zou's status as a director, officer, or employee. *See Union Bank*, 232 Cal. App. 3d at 949 (the "whole title" of corporation assets is "in the corporation").

Zou does not dispute these basic principles. But Zou argues that she acquired a property interest in the money in the TD Ameritrade account because Zou and Murillo agreed to set it aside for dividends to be paid to her and Murillo. There is a factual dispute as to whether this actually

occurred.[5] If it did, it might give Zou an interest in half of the money in the TD Ameritrade account.[6] This factual dispute precludes a grant of summary judgment on this issue to Accu Casting.

A shareholder may become an owner of a corporation's property when "a portion of the corporation's earnings is segregated and set aside for dividend payments on action of the directors in declaring a dividend." *Miller v. McColgan*, 17 Cal. 2d 432, 436 (1941). Zou avers that this is what occurred. Specifically, Zou claims that she and Murillo agreed to "agreed to declare $300,000.00 as shareholder dividend," with $150,000 going to each of them. ECF No. 77 at 197–98 ¶ 5. Per Zou, the two agreed to take advantage of the deflated stock values caused by the COVID-19 pandemic and invest "declared dividend" together. *See id.* If Zou and Murillo indeed agreed to declare a dividend and transferred the declared dividend to a joint account to invest together, Zou could have an interest in half of the money.

Accu Casting argues that Zou's declaration alone should not preclude summary judgment. *See* Accu Mot. at 31. Accu Casting first argues that this evidence is inadmissible. *See id.* The Court disagrees. Although a declaration might be inadmissible hearsay at trial, a party opposing a summary judgment motion may do so with affidavits or other sworn statements. *See* Fed. R. Civ. P. 56(c)(1) (A party asserting that a fact "is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, *affidavits or declarations*) (emphasis added); *see also* Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 265 (9th Cir. 1991) ("If the moving party satisfies his initial burden, the opposing

---

[5] Zou claims in a declaration that Accu Casting paid low salaries to her and Murillo because it intended to eventually issue a large dividend. ECF No. 77 at 197–98 ¶ 4. Zou claims she and Murillo agreed to set aside the money in the TD Ameritrade account for the purpose of paying dividends. *Id.* ¶ 5. Accu Casting objects to this evidence on various grounds. ECF No. 76 at 3. The Court OVERRULES the objection, finding that this testimony is potentially relevant and could be admissible if Zou testified to it at trial. But the Court does not find as undisputed facts that Accu Casting intended to pay dividends or that the TD Ameritrade account was a set aside for dividends. Zou did not submit that these facts were undisputed in any filing (although she referred to them in disputing certain other facts, *see, e.g.*, ECF No. 75 ¶ 9), and therefore did not give Accu Casting any procedural opportunity to contest them.

[6] The money has grown since initial investment. Assuming that Zou is correct, and the parties decided the money would be a dividend and then placed it in the account, it is still unclear on the record here which party would own the accumulated investment profits. In any case, Accu Casting has not met its burden of showing that undisputed facts compel the conclusion that the money (principal or profit) belongs solely to Accu Casting.

party may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."); *Celotex*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."). Accu Casting cites to *Orr v. Bank of America*, which held that a "trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). But *Orr* was discussing unauthenticated documents, not a declaration of facts based on personal knowledge. *See id. Orr* does not preclude the Court from considering a sworn statement, as the other authorities cited above make clear. Accu Casting also cites *Hernandez v. Spacelabs Med. Inc.*, which held that a party may not oppose a summary judgment motion "with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107 (9th Cir. 2003). But the Court does not find that Zou's declaration is unsupported conjecture or a conclusory statement. *See id.* Zou declared specifically that she and Murillo decided to declare a dividend, included the context as to why, and explained what they did with the declared dividend. *See* ECF No. 77 at 197–98 ¶¶ 4–6. This is sufficient to create a triable issue of material fact.

Accu Casting also argues that Zou waived any claim to a right to this purported dividend by not bringing a counterclaim for it. *See* Accu Mot. at 31 n.3. But Accu Casting provides no argument for why such a counterclaim would be compulsory. The Court sees no basis on which it would be, particularly given that the money is currently in an account controlled by Zou and is being held in trust pending the outcome of the litigation. Zou is plainly opposing Accu Casting's claim that Accu Casting has sole ownership of the money. The Court does not find that she waived her right to contest as such.

Accordingly, the Court finds that the dispute of fact as to whether a dividend was declared precludes a declaration at this stage that the money is owned solely by Accu Casting and that it must be returned.[7] Accu Casting's Motion for Summary Judgment is DENIED for this reason.

---

[7] Zou also raises concerns that if returned to Accu Casting, the money would be used on legal fees associated with this litigation. *See* Accu Mot. at 25. The Court need not address this issue in light of its determination that there a genuine issues of material fact preventing summary judgment in Accu Casting's favor.

### B. Zou's Motion for Summary Judgment (ECF No. 92) is denied.

Zou's sole argument in her Motion for Summary Judgment is the same one discussed above[8] —that Murillo did not have authority to bring suit on behalf of Accu Casting. *See* Zou Mot. The only distinction between the two motions is that Zou brings this argument as to all of Accu Casting's causes of action (without discussing the specifics of any), rather than as a defense against the thirteenth cause of action. *See id*. Zou's arguments rests on the purported fact that Zou did not resign as a director of Accu Casting.

Whether Zou resigned as a director is a disputed issue of fact. The Court finds that undisputed facts show that Zou communicated a resignation from some role at Accu Casting, but that undisputed facts do not settle the question of whether she resigned as a director. Zou has not shown that she did not resign as a director, and therefore her motion fails.

Zou held multiple roles at Accu Casting, and it is not clear which role(s) she resigned from. She was the CFO, a director, and a major shareholder. *See* ECF No. 75 ¶ 5. She wrote to Murillo that she "want[ed] out" of Accu Casting, and then later wrote that her "decision to resign came after a long deliberation and [careful] consideration." ECF No. 77 at 83; ECF No. 77 at 142–143. She wrote that "I agree that we need to continue to communicate on what action needs to be taken now that I have resigned." ECF No. 77 at 81. She also wrote, in describing a previous meeting, "at that

---

[8] It is unclear to the Court why Zou and Accu Casting filed these as two separate motions. The Court's Standing Order makes clear, in Section VII(E) that the "Court will not entertain cross-motions [for summary judgment] that seek to adjudicate the same legal issues." *See* Standing Order, Section VII(E). "If parties wish to cross-move for summary judgment, their counsel shall meet and confer to determine which party will move and which will oppose the one motion for summary judgment." *Id.*

Here, Zou's Motion for Summary Judgment raised an argument that is identical to one already briefed at length in opposition to Accu Casting's Motion. Although she expanded the scope of relief sought (addressing all of Accu Casting's claims rather than just the one Accu Casting moved for summary judgment on), it appears to the Court that this could have been brought as one consolidated motion for summary judgment. In fact, large portions of the joint briefing in Zou's Motion for Summary Judgment appear to be copied and pasted from the joint briefing in Accu Casting's Motion for Summary Judgment. *Compare* Zou Mot. at 12:20–13:28 *with* Accu Mot. at 18:21–19:16 (Zou's argument as to why the Bylaws preclude Murillo from hiring counsel and bringing suit); *compare* Zou Mot. at 17:12–18:06 *with* Accu Mot. at 32:09–27 (Accu Casting's response to Zou's citation to *Anmaco*).

The parties are implored to review the Court's Standing Order, as well as the Local Rules and the Federal Rules of Civil Procedure, and to follow them for the remainder of the action.

moment, I resigned." ECF No. 77 at 85. Although it is clear that she resigned from some role(s), it is not clear which. Whether Zou resigned a director is a disputed issue of material fact.

This disputed issue of fact precludes the Court from granting Zou's Motion for Summary Judgment, which would require a finding that Zou did not resign as director. Zou has not shown that undisputed facts support such a finding.

Zou's citation to *Anmaco, Inc. v. Bohlken* is unpersuasive. *See* Accu Mot. at 19. *Anmaco* concerned "the general power of the president to act when the directors are deadlocked." *Anmaco, Inc. v. Bohlken*, 13 Cal. App. 4th 891, 898 (1993). Although the court wrote "there is no power to institute litigation in the corporate name against the other 50 percent shareholder," this was in a context where the director and president who initiated the suit *did not have the consent of the other director*, who was also a 50% shareholder. *See id.* There is not a general rule against a corporation filing suit against a 50% shareholder, there is rather a rule against filing suit against such a shareholder when the board of directors is deadlocked. *See id.* If Zou resigned as a director, then *Anmaco* would be inapposite. *See id.*

Because Zou has not shown that she did not resign as a director, Zou's Motion for Summary Judgment is DENIED.

V. **Conclusion**

For the reasons stated herein, Accu Casting's Motion for Summary Judgment (ECF No. 72) is DENIED, and Zou's Motion for Summary Judgment (ECF No. 92) is DENIED.

IT IS SO ORDERED.

Dated: December 7, 2023

_____
MAAME EWUSI-MENSAH FRIMPONG
United States District Judge